FOSTER v. REDFIELD and Others.

*Mandamus. Practice. Judgment. Divorce. Procedendo.*

The final entry in a case, made by direction of the court, on the docket of a given
term, is conclusive evidence of the disposition made of the case for that term ; and
what judgment or order shall be made in a case, is within the control of the court
until such term shall have ended by adjournment without day.  Thus, if a decision
made earlier in the term, but not acted upon, be changed or vacated by the final
entry directed by the court on its own motion, *mandamus* will not lie to compel the
court to proceed to judgment in accordance with such decision.  Nor is mandamus
a remedy against an erroneous order or judgment.

A petition for divorce, unlike an ordinary proceeding at law, involves the interests,
not only of the parties thereto, but of their children and of the public.  Therefore,
where after the hearing of such a petition brought by the mother of two young chil-
dren, the court declined to grant a divorce, and, of its own motion, continued the case,
with a view to a reconciliation of the parents and the probable better support and
education of their children, a writ of *procedendo* will not lie, commanding the court
to proceed to judgment.

A husband against whom the wife had brought a petition for divorce, and upon whom
she had procured an order of court for temporary alimony, having absconded from
the jurisdiction of the court, and beyond the reach of process to enforce obedience
to such order, brought a petition for mandamus to compel the court to proceed to
judgment upon the wife's petition in accordance with a previously announced de-
cision in the petitioner's favor.  *Held,* that as he had put himself in alienage and
enmity to the judicial authority of the state, he could not sustain the petition.

Petition for Mandamus, brought to the August Term, 1877,
Washington County Supreme Court.  The petition alleged that
a libel for divorce was brought against the petitioner to the March
Term of the Washington County Court, 1877, by the petitioner's
wife, alleging intolerable severity and refusal to support, and
praying for the custody of their two children, for alimony, and
for an injunction, restraining the petitioner from interfering with
the care and custody of said children, and from selling or other-
wise disposing of his real estate, summoning him to appear at
said term, and enjoined him from interfering with the care and
custody of said children, and from disposing of his real estate
during the pendency of the libel ; that this petitioner appeared at
said term before said court, which consisted of Timothy P. Red-
field, Willard S. Martin, and Philander Riford, and denied the

allegations of the libel; that the libellant then represented to the court that she had no means to carry on litigation, and prayed for temporary alimony, which was granted, the court ordering the petitioner to pay $50 before the hearing, which was duly paid; that the cause was duly tried at that term before said judges, who " then and there determined and decided all questions of fact as well as law adversely " to the libellant and in favor of the petitioner, which decision was announced in open court, REDFIELD, Judge, speaking for the court, and saying that the libellant had failed to show sufficient cause for a divorce, and that her prayer was denied; that the case was fully and fairly tried, and no exceptions were taken by either party; but that said court did nevertheless omit, neglect, and refuse, and still did neglect and refuse, to order said decision to be recorded, and, upon its own motion, and without the knowledge of the petitioner, ordered the clerk's entry showing said decision to be erased, and the cause to be continued to the September Term of said court, stating that there would be no further hearing in the cause. *Prayer*, for a writ of mandamus, requiring said judges to proceed to final judgment according to said decision, and cause the same to be entered upon the record of said court.

The answer admitted the pendency of the libel and hearing thereon, but denied that the court determined and decided all questions of law and fact adversely to the libellant, and in favor of the petitioner, and that the petitionee REDFIELD, speaking for the court, said that the libellant had failed to show cause for divorce; alleged that the court found, and that said REDFIELD, as the organ of said court, in substance stated, that the petitioner had treated the libellant with personal violence and great harshness, and had been very niggardly in furnishing her with the necessaries and comforts of life; that said court then and there admonished the petitioner that such conduct had no justification nor excuse, and announced that in the interest of both parties, and of their young children, the court declined, as the case then stood, to grant a divorce, and should continue the case to the then next term of said court, with the purpose of retaining jurisdiction of the parties, hoping, and in substance stating, that the court

would expect that the petitioner would review his conduct to his wife, and give assurance that he would treat her kindly, and care for and educate his children.  The answer further alleged, that after said suit was continued, the libellant applied by petition to the petitionee REDFIELD, as one of the judges of the Supreme Court, for an order for temporary alimony, alleging, *inter alia*, that the libellant and her two children were in distress, without the means for procuring food and shelter; whereupon, on hearing, the petitioner appearing, it was ordered that the petitioner pay to the libellant for her support and the support of her children, a certain monthly stipend; that afterwards the libellant made application for an enforcement of said order, alleging that the petitioner had refused to comply therewith, whereupon it was ascertained that the petitioner had fled from the jurisdiction to Canada, so that process could not be served upon him, and had there remained in contempt of said order; that said cause was still pending, and under the jurisdiction of said court; and insisted that the petitioner, being so in contempt and out of the jurisdiction, ought not to be heard in any matter or thing relating to said cause until purged of his contempt.

The cause was heard at this term on petition, answer, and testimony tending to support their several allegations.  There was also testimony tending to show that the petitioner was out of the jurisdiction by advice of counsel.

*T. J. Deavitt* and *S. C. Shurtleff*, for the petitioner.

When the defendants had performed the judicial action of hearing and deciding the case, their work was done.  There only remained the ministerial duty of entering up judgment.  Where a judicial body has found all the facts necessary to a judgment, so that the judgment is nothing but the conclusion of law upon those facts, the entering up of judgment is in its nature a ministerial act, and *mandamus* is the proper remedy to enforce it. *The People* v. *Supervisors of Schenectady*, 35 Bard. 421; *Carpt.* v. *Commissioner*, 21 Pick. 259; *Insurance Company* v. *Wilson Heirs*, 8 Pet. 303; *Richards* v. *Wheeler*, 2 Aik. 369; *Lloyd* v. *Brinck*, 35 Texas, 1.  It is the only adequate mode of relief

where an inferior tribunal refuses or neglects to act upon a subject brought properly before it. *Insurance Company* v. *Wilson Heirs*, 8 Pet. 303 ; *Carpt.* v. *Commissioner*, 2 Pick. 259. It issues to the judges of any inferior court, commanding them to do justice according to the powers of their office whenever it is delayed, and ought to be used on all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one ; *per* Lord MANSFIELD, in *Rex* v. *Baker*, 3 Burr. 1266 ; 3 Bl. Com. 110. It is the proper writ to compel judges to sign true bills of exceptions, to render judgments upon verdicts, to sign judgments where the law requires that duty, and to strike off continuances when made without sufficient reason. *Lloyd* v. *Brinck*, 35 Texas, 1 ; *Insurance Company* v. *Wilson*, 8 Pet. 304 ; *Smith* v. *Moore*, 38 Conn. 108 ; 5 Ark. 246.

The authority of this court has been regarded as co-extensive with the authority exercised by the court of King's Bench. *Woodstock* v. *Gallup*, 28 Vt. 587 ; Gen. Sts. c. 30, s. 11 ; *In re* White River Bank, 23 Vt. 478. The general prayer in the petition is all that is required, to authorize the granting of this writ. 28 Vt. 587.

The petitioner is not in contempt. He has never been so adjudged by any court. It appears from the evidence that he was acting under advice of counsel.

*Heath & Carleton*, for the petitionees.

The County Court did not judicially decide all or any questions of law or fact in the cause, but the cause was continued without objection by either party. See Session Laws 1870, 66. The whole matter therefore is still pending, and within the jurisdiction of the court, and subject to its discretion. Acts of 1870, Nos. 27, 28.

The County Court has the power, in its discretion, to continue a cause at any stage of the proceedings ; and such discretion is not revisable ; and in such case mandamus will not lie. 2 Esp. 668. The only writ that could be granted in any event would be one in the nature of a procedendo. High Ext. Rem. 124. But

as there has been no demand on the part of the petitioner nor any refusal on the part of the petitionees, that writ cannot be granted. Lofft, 148. Besides, the County Court could only be commanded to proceed. Here the prayer is that the County Court be commanded to pass a particular judgment; this would take from the County Court the inherent right to exercise judicial power. Hence, the prayer will not be granted. 2 Aik. 369 ; 3 Dal. 42 ; 1 Bl. Com. 668 ; 5 Mass. 435.

All the County Court did or attempted to do was acquiesced in by the parties in the suit, without remonstrance or objection by any of them, so that the petitionees are not shown to be guilty of any laches. 39 Cal. 411 ; High Ext. Rem. 126.

Mandamus will not be granted to compel a court to alter its record. *Dixon v. Judge of Second Judicial Circuit,* 4 Mo. 236 ; High Ext. Rem. 127 ; Redf. Railw. Cas. 463. Nor to set aside a verdict; nor to grant a new trial.

The petitioner is guilty of laches, and is in actual contempt, and is not entitled to be heard until he purges himself thereof. High Ext. Rem. 27. The petition should have been sworn to by the petitioner. 3 Stephen N. P. 2291.

The opinion of the court was delivered by

BARRETT, J. Though no member of the court has any doubt as to the result which the law requires in this case, what is shown as constituting the case renders it so strange that such a proceeding should have been instituted and carried on to solemn argument by learned and grave counsel, as to "give us pause" as to what consideration and what treatment the case should receive by the court.

It has long been familiar as established law, and constantly acted on, that the final entry, made by direction of the court on the docket of a given term of court, is the conclusive evidence of the disposition made of the case for that term, and that, till the definitive adjournment of the court for such term, what such final entry shall be is within the control of the court; and that the direction for that final entry constitutes the disposing of the case for that term by the court. What judgment or order the court

will render or make in any cause in a given term of the court, is within the control of the court until such term shall have finally ceased by adjournment without day.. Unless there be a special order for a judgment before the term closes, no judgment is regarded as rendered till the day that closes the term. And when such special order has been made, it is within the province and prerogative of the court, if it sees fit, and on its own motion, to change or vacate that order at any time within the term, unless it has been acted on, and rights and interests affected by being thus acted on. And the mode of calling in question such action of the court is by taking exception to the judgment or order that disposes of the case, or by some proceeding to get the error corrected. Mandamus is not a remedy against an erroneous order or judgment. It is only adapted to the compelling of something to be done in consequence of the order or judgment made or rendered, which it is the duty of the officer of the law to do. It presupposes that an order has been made, or a judgment rendered. This disposes of the case, so far as it rests on the assumption that the court had rendered a judgment in the case, but had neglected or refused to have it entered upon the docket. For, as before said, the entry directed by the court shows the action of the court constituting the disposition of the case at and for the term. Unless that entry shows a definite decision, then no final judgment has been rendered, and the cause continued to be pending in the court.

If the petition be regarded as asking, in the alternative, for a writ of *procedendo*, the case as disclosed shows no ground nor occasion for such writ. It is not shown that the court has neglected, or is in the process of neglecting, or is likely to neglect, its duty in the matter of rendering final judgment in the case. Without spending time in discourse as to what might be the duty of the court in an ordinary suit at law between parties, it will fully serve present purposes to remark that, not *alone* are the personal interests of the parties to a divorce suit involved, but the interest of children, and the interests of the public, as the public stand related to, and affected by, the institution of marriage—an institution more vital than any other to society and its

Foster *v.* Redfield et als.

well being—resulting, as it does, in the fact, and relations, and duties of parentage ; involving, as it does, the current support and the progressive development and education of children in mind and morals, in sentiments and conduct, and manners.   When considered in these respects only in its secular complexion, it is obvious that a proceeding in court for the severing of the marriage bond, is to be regarded by the court as requiring much to be considered that does not appertain to an ordinary suit at law. The court is charged with a duty to the public, and to the children ; and so far as my own experience has gone, and so far as I know of the views and action of other judges, that duty to the public and to the children has constituted an important factor in determining the course to be taken with the given case.   After the evidence has all been given, upon which the action of the court was asked, I have, in several cases, ordered a continuance to the next term, and that the other party, or certain persons, should then be called to testify, for the information and satisfaction of the court as to certain features of the case.   In *ex parte* trials, and also in contested cases, I am accustomed to examine witnesses sharply and thoroughly, to elicit as fully as possible all the facts and circumstances, not merely as bearing on the alleged cause, but as bearing on the interests of the children and of the public, to be affected by the result of the proceeding.   I have known, in cases in which the statute does not make the parties witnesses, a continuance to be ordered by the court, where the libellee was not appearing, and such libellee ordered to appear and submit to examination by the court.   Such a course is often the only means the court has to protect itself from being made the instrument of a fraud upon the law, in collusive cases instituted by some members of the Bar, who are sworn not to " do any falsehood in court, nor consent that any be done, and if they know of any, they will give knowledge thereof to the judges or some of them, that the same may be reformed."   And in spite of this means, we often find ourselves victimized by the impositions of certain exceptional lawyers, so called.   A wider range of illustration is not necessary in order to show how divorce cases are regarded, as war-

ranting and requiring a consideration and handling by courts, differing in that respect from ordinary suits at law.

We assume to be true, the answer of the respondents, as to the views and reasons upon which the case was continued; and we regard such continuance as being within the province of the court, and in the exercise of a lawful and judicious discretion. The hope that the parties might become reconciled, and continue to live together as husband and wife, and as father and mother of the children—an event of such moment to the children, an event of such moment to themselves as the parents of the children—would seem to justify amply, if not to demand, the continuance, in the exercise of any discretion, judicial or humane, that should not be subjugated by the skeleton hand of heartless, not to say senseless, technicality.

There is another and decisive ground and reason for denying the writ. This court, as now constituted, may not be counted upon for help towards enforcing action of the County Court in behalf of a party who has absconded from the realm for the purpose of defying the jurisdiction and the orders of the judicial authorities of the state, in the very matters in reference to which he is asking the action of this court in his own favor. If he makes himself an alien, in enmity to the jurisdiction and judicial authority of the state in reference to a matter whereof that authority had jurisdiction, as well as of himself, the character of alien enemy will adhere to him when he asks of this court help towards rendering his enmity successful.

We commend to any member of the Bar an interested consideration of the posture in which he places himself, when he avows that the departure of his client from the realm was by his professional advice in the pending cause.

Petition dismissed with costs.